UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MICHEL TOLIVER,

        Plaintiff,

-v-                                    No. 10 Civ. 5803 (LTS)

THE CITY OF NEW YORK et. al.,

        Defendants.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 03 2012

### MEMORANDUM OPINION AND ORDER

        Plaintiff Michel Toliver ("Plaintiff"), who was at all relevant times a pre-trial detainee at the George R. Vierno Center ("GRVC") on Rikers Island, brings this action pro se pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting excessive force claims against the City of New York (the "City"), Commissioner Dora Schriro of the New York Department of Corrections ("NYDOC"), Chief Larry Davis of NYDOC, GRVC Warden Kathleen Mulvey, and Corrections Officer Remy (Shield # 17286) (collectively, "Defendants"). The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

        The City, on behalf of all Defendants, has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing of Plaintiff's Section 1983 claims and, to the extent the Complaint may be read to assert state-law claims, any state-law claims as well. Defendants' motion papers include a Notice pursuant to S.D.N.Y. Local Civil Rule 56.2, spelling out Plaintiff's obligation to make evidentiary submissions in opposition to the motion. Plaintiff has filed a number of documents and argumentative submissions in response to the motion. The Court has reviewed thoroughly all of the parties' submissions and,

Copies mailed/faxed to Mr. Toliver
Chambers of Judge Swain   12-3-2012

for the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The following recitation of material facts is drawn from Defendants' S.D.N.Y. Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1 Statement"), Plaintiff's deposition testimony as excerpted in Exhibit A to the Declaration of Joseph A. Marutollo in Support of Defendant's Motion for Summary Judgment ("Ex. A"), Plaintiff's Additional Statement of Facts, and Plaintiff's Complaint.[1] Plaintiff's factual allegations are taken as true for purposes of this summary.

On May 10, 2010, Plaintiff was a pre-trial detainee in the custody of the NYCDOC at the GRVC facility, scheduled to be transported from the housing area to the intake area, where he would be produced for court. (Defs.' 56.1 Statement ¶¶ 1, 2.) Officer Schiano, the assigned escort officer, began escorting Plaintiff to the intake area. (Id. ¶ 3.) Plaintiff alleges that Officer Remy saw Plaintiff and Officer Schiano en route, and told Officer Schiano to "Drag [Plaintiff's] faggot ass down to the [intake] room." (Pl. Opp. to Defs.' Mot. Sum. J., Docket Entry No. 85, at 3.) According to Plaintiff, Officer Remy then decided to take over Officer Schiano's escort duty and continued escorting Plaintiff to the intake area. (Defs.' 56.1 Statement ¶ 4.) Officer Remy was not supposed to be the escort officer and Plaintiff wanted to go with Officer Schiano. (Id. ¶ 5.) Plaintiff stated that he "was not under any circumstances going to go with defendant C.O. Remy," and proceeded to turn around and walk away from the

---

[1] Plaintiff also submitted a Local Rule 56.1 Statement. Plaintiff's Statement simply denies Defendant's allegations and provides no additional facts beyond those proffered in Plaintiff's other submissions.

intake area, back towards the housing area. (Id. ¶¶ 5, 6.) Plaintiff further alleges that Defendant Remy "blocked [P]laintiff from walking back to the housing area, so . . . he turned around and headed [back] towards" the intake area, as Officer Remy ordered him to do. (Id. ¶ 11.) Plaintiff claims that Officer Remy believed Plaintiff "was walking too slowly, and forcefully took [Plaintiff's] cane away . . . and struck [him] in the back, and hit [him] again, and [he] collapsed to the floor." (Id. ¶ 12 (quoting Ex. A, p. 25, lns: 20-23).)

Medical staff arrived on the scene approximately two minutes later. (Id. ¶ 16.) When medical staff tried to administer an MRI to examine Plaintiff's injuries, Plaintiff refused. (Id. ¶ 19.) Plaintiff claims that he suffered multiple injuries as a result of the alleged assault by Officer Remy, including "spinal pain, leg weakness, and migraines." (Defs.' 56.1 Statement ¶ 17 (quoting Ex. A, p. 64, lns: 20-25).) Plaintiff admits that he cannot produce any evidence which "attributes these specific injuries purely to" Officer Remy's alleged assault, and that, to the extent he suffered any injuries, the injuries "resulted from 'a combination' of the alleged assaults raised in each of his other federal lawsuits" currently pending with the Court. (Id. ¶ 20 (quoting Ex. A, p. 79, lns: 13-19).)

DISCUSSION

Summary judgment is to be granted in favor of a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Winans v. Starbucks Corp., 796 F. Supp. 2d 515, 517 (S.D.N.Y. 2011). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that "the party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he non-moving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Similarly, "mere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment. Winans, 796 F. Supp. 2d at 517.

In this lawsuit, Plaintiff asserts that Officer Remy's alleged assault amounted to excessive force in violation of the Due Process Clause of the Fourteenth Amendment. Further, Plaintiff alleges that Defendants Commissioner Schriro, Chief Davis, and Warden Mulvey (collectively, the "Supervisory Defendants") repeatedly ignored Plaintiff's complaints, phone calls, and letters alerting them to numerous assaults against him at the hands of corrections officers working at the GRVC facility. Plaintiff avers that ignoring his complaints and failing to take corrective action against the officers named therein amounts to deliberate indifference to deprivations of Plaintiff's constitutional rights.

Further, Plaintiff alleges that the City of New York is liable for his injuries because the actions (or inactions) of the Supervisory Defendants evidence an official practice, policy, or custom of Defendant City pursuant to which allegations of assault are ignored, incidents of assault are covered up, and, in some instances, even encouraged. (Pl. Opp. to Defs.' Mot. Sum. J., Docket Entry No. 85, at 4, 13.) Plaintiff argues that Officer Remy was able to assault Plaintiff because of the City's deliberate indifference to prisoner abuse, and that, as a result, the City is liable under Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658 (1978).

Excessive Force Claim Against Corrections Officer Remy

   Plaintiff asserts the excessive force allegedly used by Officer Remy against him deprived Plaintiff of due process under the Fourteenth Amendment and is thus actionable under Section 1983. Courts consider claims "of excessive force by a pre-trial detainee under the same standards that govern a claim [by a convicted prisoner], under the Eighth Amendment, to be free from cruel and unusual punishment." Chambliss v. Rosini, 808 F. Supp. 2d 658, 667 (S.D.N.Y. 2011). Courts have made clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992). To demonstrate that a particular use of force was "excessive," Plaintiff "must satisfy both an objective and subjective element." Chambliss, 808 F. Supp. 2d at 667. Applied to this litigation, the two-prong test asks whether (1) Officer Remy acted with a sufficiently culpable state of mind when he allegedly assaulted Plaintiff and (2) the alleged assault "was objectively 'harmful enough' to establish a constitutional violation." See Chambliss, 808 F. Supp. 2d at 667 (quoting Hudson, 530 U.S. at 8).

   To satisfy the subjective prong of the test, Plaintiff must demonstrate that Officer Remy acted "maliciously and sadistically to cause harm," not "in a good-faith effort to maintain or restore discipline." See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). To determine maliciousness, courts consider the following factors: (1) "the extent of the plaintiff's injuries," (2) "the need for the application of force," (3) "the correlation between that need and the amount of force used," (4) "the threat reasonably perceived by the defendant," and (5) "any efforts made by the defendant to temper the severity of a forceful response." Id.

   The objective prong of the test "focuses on the harm done, in light of

contemporary standards of decency." Chambliss, 808 F. Supp. 2d at 667. While not dispositive of the inquiry, the extent of Plaintiff's injuries is "relevant to a determination of whether force was 'sufficiently serious by objective standards.'" Id. (quoting Ninortey v. Shova, No. 05 Civ. 542, 2008 WL 4067107, at *10 (S.D.N.Y. Sept. 2, 2008)).

Here, with regard to the subjective prong of the test, Plaintiff's allegations that Defendant Remy took his cane and hit him hard enough in the back to knock him to the floor, causing severe spinal pain, leg weakness and migraines, are sufficient to frame a genuine factual issue as to whether Defendant acted maliciously and sadistically to cause harm. Although Plaintiff admits that he refused an MRI when medical staff attempted to examine him, and asserts that the injuries he suffered resulted from 'a combination' of the alleged assaults raised in each of his other federal lawsuits" (Id. ¶ 20 (quoting Ex. A, p. 79, lns: 13-19)), "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010). Plaintiff's allegations as to the nature of his injuries are sufficient, if believed, to support the objective prong of his claim; he will of course have to prove at trial that the injuries are to a significant degree attributable to the Remy assault. Thus, there is a triable issue of fact as to the objective prong of the test as well as to the first factor of the subjective prong.

There are also genuine factual issues as to the amount of force used, and whether such force was necessary. Plaintiff alleges that Officer Remy hit Plaintiff in the back twice simply because Plaintiff was walking too slowly. (Pl. Opp. to Defs.' Mot. Sum. J., Docket Entry No. 85, at 3.) Plaintiff contends that, at the time of the assault, he was obeying Officer Remy's orders to walk towards the intake room. (Ex. A, p. 25, lns: 14-23.) Defendants claim that Remy

was seeking to restore order after Plaintiff refused to comply with his directions. Plaintiff further alleges that Remy assaulted him because Plaintiff is a homosexual, and that Remy told Officer Schiano to "drag [Plaintiff's] faggot ass down to the receiving room" prior to the assault. (Pl. Opp. Mot. Sum. J. at 3.) On this record, it cannot be said that no reasonable jury could find that Plaintiff has established the subjective and objective prongs of his excessive force claim. Accordingly, Defendants' motion is denied as to Plaintiff's excessive force claim against Officer Remy.

Monell Claim Against the City of New York

Municipalities and other local governments may be sued directly under Section 1983 where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 690 (1978). Moreover, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Id. at 690-91. The policy or custom requirement "is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiff claims that the City's failure to properly supervise and/or discipline corrections officers in an attempt to remedy the allegedly rampant problem of assaults on inmates amounts to deliberate indifference to the known risk that assaults on inmates would occur. (Pl. Opp. to Defs.' Mot. Sum. J. at 4.) "Deliberate indifference is a stringent standard of

fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[s]." Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012). Plaintiff must present evidence suggesting "that the official made a conscious choice, and was not merely negligent." Id.

While Plaintiff has produced numerous letters and complaints that he himself addressed to supervisors at the GRVC facility regarding alleged abuse, the mere existence of letters containing unsubstantiated allegations of abuse is an insufficient basis upon which to impute to the City a policy of deliberate indifference to prisoner abuse. These letters do not constitute sufficient evidence of "instances of tolerant awareness by supervisors of abusive conduct to support an inference that [the City] had a policy, custom or usage of acquiescence in such abuse." Jones, 691 F.3d at 82 (2d Cir. 2012). Nor do these letters show "that supervisors communicated to officers an attitude of indifference to abuse so as to give the officers a sense of liberty to abuse" Plaintiff's rights. Id.

Indeed, even when construed in the light most favorable to Plaintiff, his proffer suggests that Defendants were not deliberately indifferent to violations of Plaintiff's constitutional rights, and that they actually invited Plaintiff to pursue his complaints through appropriate channels. Plaintiff admits he "never indicated that [Defendants] ignored a letter. In fact [Defendant Schriro] answered my complaints regarding my being assaulted stating that Plaintiff should file a grievance." (Pl. Opp. to Defs.' Mot. Sum. J., Docket Entry No. 85, at 12.) Plaintiff produced a letter from Investigator Johnson, on Commissioner Schriro's letterhead, sent in response to one of Plaintiff's complaints, informing Plaintiff that if he wished to pursue his abuse complaint further, he would have to comply with the proper procedures internal to the prison and address his complaints to the proper parties. The conclusory allegation that, through

the City's "deliberate" conduct, the municipality was the moving force behind Officer Remy's assault is insufficient to defeat the motion for summary judgment.

        Plaintiff also alleges that the City has a policy of "cover[ing] up" instances of prisoner abuse and that this policy gave the officers the sense that they could abuse prisoners with impunity. Plaintiff's contentions in this regard are based principally on his assertions that the City has failed to produce videotape of the assaults that he has allegedly suffered. The absence of video surveillance, standing alone, is not sufficient to raise a triable issue of fact as to whether prison officials <u>intentionally</u> delete or tamper with video recordings so as to "cover up" violations. Plaintiff also alleges that numerous prisoners have been abused and officers have filed false reports to cover up violations. Yet, Plaintiff produced no affidavits from other prisoners who have been abused, nor did Plaintiff identify any specific reports that he alleges contain falsified information. Plaintiff's conclusory allegations regarding the "cover up" policy are insufficient to defeat Defendants' motion for summary judgment on this issue.

        Finally, Plaintiff alleges that a policy of tolerating and encouraging abuse may be inferred from the number of alleged assaults against Plaintiff, some of which postdate Officer Remy's alleged assault giving rise to this litigation. Such allegations are insufficient because, even if these incidents occurred, they do not support a finding of widespread actual abuse, much less that it was tolerated and encouraged at the policy level. In further support of his contentions, Plaintiff makes conclusory allegations of widespread abuse of other inmates but proffers no evidentiary material or specific facts in support of these allegations. Thus, Plaintiff has failed to meet his burden of proffering evidence from which a reasonable factfinder could conclude that his alleged injuries were the product of an official policy or custom, and, therefore, the City is entitled to judgment as a matter of law dismissing the <u>Monell</u> claim.

Section 1983 Claim Against Commissioner Schriro, Chief Davis, and Warden Mulvey

To establish supervisory liability under Section 1983, Plaintiff must show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Toliver v. Dep't of Corr., No. 10 Civ. 6298, 2012 WL 4510635 at *6 (S.D.N.Y. Apr. 10, 2012) (report and recommendation adopted, 10 Civ. 6298, 2012 WL 4513435 (S.D.N.Y. Sep. 30, 2012)). Plaintiff can demonstrate the requisite personal involvement by showing any of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Qasem v. Toro, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 2010) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).[2] As explained above, Plaintiff's proffers are insufficient to demonstrate a genuine dispute of material fact as to (3) "a policy or custom under which unconstitutional practices occurred, or [that Defendants] allowed the continuance of such a policy or custom," or that (5) Defendants "exhibited deliberate indifference to the rights of inmates by failing to act on information that unconstitutional acts were occurring." Id.

As to the remaining avenues for establishing personal liability, Plaintiff does not suggest (1) that any Supervisory Defendants physically assaulted him or were directly involved

---

[2] While the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), may have narrowed the viability of some of the Colon predicates for supervisory liability, the Court need not determine to what extent the Colon predicates survive, as Plaintiff does not proffer sufficient evidence to establish any of the Colon predicates.

in the alleged violation, nor does he show (2) that any Supervisory Defendant "after being informed of the violation through a report or appeal, failed to remedy the wrong." Colon, 58 F.3d at 873. "A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official 'failed to remedy the violation after learning of it through a report or appeal.'" Toliver, 2012 WL 4510635 at *8 (quoting Rivera v. Goord, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000)).

Indeed, Plaintiff has provided evidence that Defendant Commissioner Schriro did not ignore, but actually responded to, at least one of his letters, telling him to file his grievance according to established prisoner grievance procedures. Simply referring allegations of abuse to the appropriate authorities within the prison system does not demonstrate that the Supervisory Defendants failed to take action to protect Plaintiff. See Morris v. Eversley, 282 F. Supp. 2d 196, 208 (S.D.N.Y. 2003) (granting summary judgment to defendants where Commissioner referred complaints of sexual assault to another prison official, in part, because there is no duty for prison commissioners to take investigative action on their own before formal procedures have had a chance to rectify the alleged wrongs).

Finally, Plaintiff produced no evidence demonstrating that Defendants were "grossly negligent in supervising subordinates who committed the wrongful acts." Qasem, 737 F. Supp. 2d at 151. Plaintiff again relies on his own allegations, many of which are conclusory, as to the occurrence of wrongful acts, and proffers no evidence as to the training provided or any deficiencies in that training. He has failed to raise a triable issue of fact regarding negligent supervision.

Plaintiff also asserts that the Supervisory Defendants were grossly negligent in hiring, and failing to fire, Officer Remy. Plaintiff fails, however, to proffer any specific non-

hearsay evidence demonstrating that the Supervisory Defendants had any reason to know of any propensity for assaultive behavior on Remy's part prior to the alleged assault on Plaintiff. Nor are Plaintiff's assertions that Remy should have been fired for allegedly smoking and drinking with inmates sufficient to make the requisite Colon demonstration of a basis for supervisory liability for the alleged violations of Plaintiff's constitutional rights. Accordingly, the Supervisory Defendants are entitled as a matter of law to judgment dismissing all of Plaintiff's claims against them.

State Law Claims

No action may be commenced in New York "against the city or any agency or an employee unless notice of claim shall have been made and served upon the city" "within ninety days after the claim arises." N.Y. Gen. Mun. Law §§ 50–k(6), 50–e(l)(a). Such notices must describe the nature of the claim, as well as the time, place, and manner in which the claim arose. See N.Y. Gen. Mun. Law § 50–e(2). The notice must also accurately identify the individuals against whom the claim is brought. See D.C. v. Valley Cent. Sch. Dist., No. 7:09-CV-9036, 2011 WL 3480389 at *2 (S.D.N.Y. June 29, 2011) (noting that "the Court must construe the notice of claim strictly to ensure that the defendants are properly named as respondents in the notice of claim"). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). Failure to comply with the Notice requirement warrants dismissal of the state-law claims. See D.C., 2011 WL 3480389 at *2.

Plaintiff has not satisfied his burden of demonstrating compliance with the Notice of Claim requirement as to any of the defendants in this case. Plaintiff states that he mailed the

Notice "under the book and case number 349-09-04484" and requests that he be able to re-send the notice. (See Letter from Michel Toliver to the Court (dated Sept. 14, 2012) (filed with the Court as Docket Entry No. 98).) The Notice of Claim to which Plaintiff refers describes an incident in which Plaintiff was assaulted by a prison captain inside his cell and his property was destroyed, a completely different incident from the alleged assault by Officer Remy on the way to court. (See Notice of Claim attached to Joseph Marutollo's Declaration in Support of Defendant's Summary Judgment Motion as Exhibit D at 1.) While late Notice of Claims are permitted, requests for late filings must "be made to the supreme court or to the county court," not the federal courts. N.Y. Gen. Mun. Law § 50-e(7); See also Horvath v. Daniel, 423 F. Supp. 2d 421, 424 (S.D.N.Y. 2006) (noting that federal courts are without jurisdiction to hear such requests). Thus, to the extent Plaintiff's Complaint may be interpreted to assert state-law claims against any of the defendants, such claims are dismissed.

Qualified Immunity

Individual defendants are "shielded from liability from civil damages under 42 U.S.C. § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Qasem, 737 F. Supp. 2d at 153. Summary judgment on the issue of qualified immunity as to Defendant Remy is inappropriate at this stage because, if Plaintiff's allegations are true, Officer Remy would not be entitled to qualified immunity, as "the right of an individual not to be subjected to excessive force has long been clearly established." Laporte v. Fisher, 11 CIV. 9458, 2012 WL 5278543 at *4 (S.D.N.Y. Oct. 24, 2012) (quoting Calamia v. City of New York, 879 F.2d 1025, 1036 (2d Cir.1989)). Thus, genuine disputes of material fact preclude summary judgment on the issue of qualified

immunity as to the allegations of excessive force against Defendant Remy. Because summary judgment is granted to the Supervisory Defendants, the Court need not determine whether those defendants would be entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. The motion is denied insofar as it is directed to the Section 1983 excessive force claim against Officer Remy and granted in all other respects. The Complaint is thus dismissed in its entirety as to the claims against the Supervisory Defendants and Defendant City, and as to any State-law claims against Defendant Remy. The Office of the Corporation Counsel is directed to contact Judge Francis's Chambers promptly to schedule a settlement conference. The final pre-trial conference will be held on **Friday, March 8, 2013, at 4:00 p.m.** This Memorandum Order resolves docket entry no. 72.

SO ORDERED.

Dated: New York, New York
    December 3, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge